In re Mary Lena RICKS, Debtor.

**Lott Furniture, Inc. d/b/a Plank Road Furniture, Plaintiff,**

v.

**Mary Lena Ricks, Defendant.**

Bankruptcy No. 98–12822.
Adversary No. 00–1116.

United States Bankruptcy Court,
M.D. Louisiana.

Oct. 3, 2000.

Martin A. Schott, Baton Rouge, LA, trustee.

### REASONS FOR DECISION

LOUIS M. PHILLIPS, Bankruptcy Judge.

In this adversary proceeding the plaintiff, Lott Furniture, Inc., d/b/a/ Plank Road Furniture ("Lott Furniture"), seeks to have this Court declare a debt allegedly owed by the defendant, Mary Lena Ricks ("Ricks"), the debtor in the underlying bankruptcy case, non-dischargeable pursuant to § 523(a)(3)(A).[1] The peculiar issue presented herein is whether, in an open Chapter 7 asset case, the claim of a creditor who receives notice of the bankruptcy after the expiration of the time within which to file a proof of claim as prescribed by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), but prior to final distribution of the debtor's estate, may have the debt declared non-dischargeable.[2]

## I. FACTS

Ricks filed a petition under Chapter 7 of the Bankruptcy Code on December 18, 1998. At the time Ricks filed her petition, she also filed the required schedules and a list of creditors.[3] Ricks, however, neither

---

1. Except where noted otherwise all references to statute are to Title 11, United States Code ("Bankruptcy Code").

2. This Court has authority to issue a final judgment pursuant to 28 U.S.C. § 157(b)(2)(I). As well, the parties have consented to the issuance of a final judgment.

3. § 521 provides:
    The debtor shall—
      (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets

listed Lott Furniture as a creditor, nor scheduled the debt allegedly owed to Lott Furniture.

Pursuant to § 342 and Rule 2002,[4] the Clerk of Bankruptcy Court issued a notice of a § 341 meeting of creditors. The § 341 meeting of creditors was set for February 12, 1999. In accordance with Rule 3002(c),[5] creditors other than governmental entities [6] had ninety (90) days from February 12, 1999, or until May 12, 1999, within which to file a proof of claim.[7]

and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs . . .

**4.** Except as otherwise noted, all references to rules are directed to the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). § 342(a) states, "[t]here shall be given such notice as is appropriate . . . of an order for relief in a case under this title." Rule 2002 provides in pertinent parts:

(a) . . . the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 20 days notice by mail of:

(1) the meeting of creditors under § 341 or § 1104(b) of the Code;

\*\*\*

(f) . . . the clerk, or some other person as the court may direct, shall give the debtor, all creditors and indenture trustees notice by mail of: (1) the order for relief; . . . (3) the time allowed for filing claims pursuant to Rule 3002; (4) the time fixed for filing a complaint objection to the debtor's discharge pursuant to § 727 of the Code as provided in Rule 4004; (5) the time fixed for filing a complaint to determine the dischargeability of a debt pursuant to § 523 of the Code as provided in Rule 4007; . . .

**5.** Rule 3002(c) states in pertinent part:

(c) In a chapter 7 liquidation, . . . a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341 of the Code . . .

**6.** *See* Fed.R.Bankr.P. 3002(c)(1)

**7.** This Court opens all its Chapter 7 cases as potentially asset cases, under the general rule provided by Rule 2002, and the overarching conceptual structure of the Bankruptcy Code and Bankruptcy Rules. Therefore, within all Chapter 7 cases opened in this Court, the notice of commencement of case advises creditors and parties in interest of the claims bar date established by Rule 3002(c). The Court recognizes that Rule 2002 contains an exception to the generally provided mode of opening and noticing the commencement of cases. Rule 2002(e) provides:

In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

However, this Court has never figured out how that provision should work. The Court has been advised by representatives of the Administrative Office of the courts that it is the only bankruptcy court whose bulb is so dim that it doesn't understand the operation of subsection (e) of Rule 2002, and that all other bankruptcy courts open all Chapter 7 cases as no asset cases on the basis of this limited exception carved out by Rule 2002(e).

The Court does not believe it possible to comply with Rule 2002(e) except by means of case-by-case review of schedules. This Court does not know who would do this (and the Court has heard from no volunteers within this Court's office of the Clerk of Court). Also because schedules are not due until 15 days after the petition is filed, the Court does not wish to delay the notice of commencement until schedules are filed. The Court recognizes that opening Chapter 7 cases as potential asset cases involves more work, more claims, etc. Probably, it also results in more assets administered and more creditor participation within the bankruptcy process. Since January 1, 1995, this Court has closed more than 25% of its Chapter 7 cases as asset cases, with distributions to creditors.

The Court makes mention of this procedure at the early stage of this opinion to properly set the context, procedurally. This proceeding does not involve a case wherein Rule 2002(e) was used as authority to issue a no asset, no proof of claim to be filed now, notice of commencement of the case.

The practical effect of the use to which Rule 2002(e) has been put by the bankruptcy courts, to open all Chapter 7 cases as no-asset cases notwithstanding the express language of the Rule, has been to read § 523(a)(3)(A) out of the Bankruptcy Code in the vast, vast majority of Chapter 7 cases. Rule 2002(e) requires the filing of no proofs of claim, and no claims bar date is set. Because no claims bar date is set, a proof of claim cannot be filed untimely. § 523(a)(3)(A) by its very terms does not apply. Therefore, in a case opened pursuant to Rule 2002(e), all debts, whether

On April 15, 1999, the Court granted Ricks a discharge under § 727 of the Bankruptcy Code. During the course of Ricks' bankruptcy case, however, the Chapter 7 trustee has discovered non-exempt assets of Ricks, and is currently administering those assets. The Chapter 7 case has not been closed.

Lott Furniture allegedly holds a claim against Ricks for a consumer debt in the amount of $495.42. Lott Furniture allegedly reduced its claim to judgment prior to bankruptcy. During the course of its collection efforts, Lott Furniture became aware of Ricks' bankruptcy proceeding. Lott Furniture received knowledge of the bankruptcy after May 12, 1999, the deadline for filing claims.

After recognizing that Lott Furniture had not been originally scheduled or listed as a creditor, Ricks amended her schedules and mailing matrix on November 4, 1999 to include Lott Furniture and its claim. In addition, on December 20, 1999, Ricks filed a proof of claim in the amount of $950.19 on behalf of Lott Furniture.[8]

On April 13, 2000, Lott Furniture instituted the instant adversary proceeding seeking to have its claim declared non-dischargeable. Ricks answered the Complaint and, at trial, the matter was submitted to the Court on a stipulated record.

At trial, the parties stipulated to several facts:

1) Ricks filed bankruptcy on December 18, 1998;

2) Ricks did not initially list Lott Furniture as a creditor or schedule the alleged claim of Lott Furniture;

3) Ricks' omission of Lott Furniture from the schedules and mailing matrix was not intentional or done with ulterior motive, i.e., fraud;

4) Lott Furniture did not have knowledge of Ricks' bankruptcy until after May 12, 1999; and

5) Ricks filed a proof of claim on behalf of Lott Furniture on December 20, 1999.

For the reasons that follow, the Court finds the debt dischargeable.

## II. ANALYSIS

### A. THE STRUCTURE OF THE CODE; THE LANGUAGE OF THE STATUTE

The general underlying motivation for a debtor to file bankruptcy is to receive a discharge of that debtor's pre-bankruptcy debts. Unless cause for exists

---

scheduled, listed, or not, are discharged, if the case is closed as a no-asset case. *See, Beezley v. California Land Title Co. (In re Beezley),* 994 F.2d 1433, 1434–1441 (9th Cir.1993) (O'Scannlain, J., concurring); *see also, In re Mendiola,* 99 B.R. 864 (Bankr.N.D.Ill.1989). *But see, Faden v. Insurance Co. of N. Am. (In re Faden),* 96 F.3d 792, 798–799 (5th Cir. 1996) (Politz, C.J., dissenting) (Fifth Circuit created a distinct addition to debts which may be excepted from discharge, by excepting a debt from discharge because the failure to schedule the creditor was knowing, notwithstanding the fact that the case was opened as a no-asset case, with no claims bar date set, and the creditor received notice of the case (after being scheduled) in time to file a timely claim once assets were found and a bar date established).

8. As best the Court can determine, the claim amount recited in the proof of claim filed on behalf of Lott Furniture by Ricks apparently incorporates judicial interest from September 19, 1989, the date of the alleged judgment. The judgment has not been made part of the record before the Court. The Court makes no ruling on the underlying validity, amount, or allowance of the claim, except to note that the proof of claim filed by Ricks on behalf of Lott Furniture was filed more than 30 days after the expiration of the time prescribed for the filing of claims by Rule 3002(c) (*See,* Fed. R.Bankr.P. 3004), and therefore, does not appear to be a timely filed claim under § 501(c) so as to line up for payment under § 726(a)(2)(B). We do not consider, because it is not before us, whether it is only claims filed tardily **by the creditor** that fall into the coverage of § 726(a)(2)(C), but point out that the only tardily filed claims that are referred to within § 726(a)(2)(C) are those filed under § 501(a), which refers to the rights of creditors and indenture trustees to file proofs of claim and of equity security holders to file proofs of interest.

for its denial, a debtor who files a bankruptcy under Chapter 7 of the Bankruptcy Code is generally entitled to a discharge pursuant to § 727.[9] Section 727, in part, provides:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter ... whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim is based on any such debt or liability is allowed under section 502 of this title.

In essence, a Chapter 7 discharge has the effect of discharging all debts which arose pre-petition, except those debts, or claims, which are rendered non-dischargeable by operation of § 523. Thus, if the debt does not fall within the auspices of § 523, the debt will be discharged.

Section 523 outlines eighteen kinds of debts or claims which are categorized as non-dischargeable debts.[10] At issue in this particular adversary proceeding is § 523(a)(3), i.e., debts neither listed nor scheduled. Section 523(a)(3) provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual from any debt—
>
> \*\*\*
>
> (3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

Lott Furniture has made no allegation that the debt was incurred as a result of fraud in the extension or renewal of credit, fraud while Ricks was acting in a fiduciary capacity, or willful or malicious injury.[11] Therefore, the provision applicable to this dispute is solely § 523(a)(3)(A).

To fall within the purview of § 523(a)(3)(A), a debt must (1) have been neither listed nor scheduled by the debtor (2) in time to permit the timely filing of a proof of claim by the creditor. It would seem then, at first blush, that if a debt is not listed or scheduled in time to allow the creditor to file a timely proof of claim, the debt will not be discharged by operation of § 727 or any of the other discharge provisions of the Bankruptcy Code to which § 523 is applicable.[12] Section 523(a)(3)(A), however, does contain an exception for notice or actual knowledge of the pendency of the bankruptcy case. Simply stated, if a creditor has notice of the bankruptcy case, i.e., from some source external to the notice generated by the scheduling of the debt,[13] in time to file a timely proof of

---

9. *See*, § 727(a).

10. *See*, § 523(a). However, four of the categories, credit fraud, fiduciary fraud, willful and malicious injury, and certain debts incurred in the course of a divorce or separation, are not self-effectuating as to the dischargeability of that particular debt. *See* § 523(a)(2), (4), (6), (15). The debt must be declared non-dischargeable, whereas the remaining fourteen categories of debts are non-dischargeable by operation of law. *See* § 523(c)(1).

11. *See* § 523(a)(2), (4), (6).

12. *See*, *e.g.*, §§ 1141, 1228(a), 1228(b), 1328(b).

13. *See*, *e.g.*, Fed.R.Bankr.P. 2002(a), (f).

claim, the debt will be discharged. It is apparent from review of the statute that the driving principle behind § 523(a)(3)(A) is notice to the creditor that a bankruptcy case is pending and that the creditor's rights may be affected.

The Bankruptcy Code grants numerous rights to creditors upon the institution of the bankruptcy case, in return for the fact that the creditor's pre-bankruptcy collection rights have (usually) been affected. For example, in a Chapter 7 case, creditors have the right to examine the debtor at the meeting of creditors,[14] object to exemptions of property,[15] or to the debtor's discharge,[16] and to vote in the election of the trustee.[17] Creditors have standing to be heard in connection with settlements and compromises involving other claims and assets of the estate.[18] As well, creditors have the right to participate in the distribution of the estate.[19]

Thus, although its right to collect its debt may be affected by the filing of bankruptcy by its debtor, by obtaining notice of the bankruptcy case, the creditor has the ability to protect the rights granted it by the Bankruptcy Code and to participate within the bankruptcy case. If the creditor is not listed or scheduled, the creditor will not receive notice of the bankruptcy as provided by Bankruptcy Code and Rules.[20] Unless the creditor receives notice of the bankruptcy from a source other than the bankruptcy court, e.g., direct communication with the debtor, other creditors, etc., the creditor, of course, will be unable to participate in the bankruptcy case and will therefore lose the prospect of taking on any of the aforementioned protective actions, most of which are time sensitive.[21]

However, § 523(a)(3)(A) does not require notice of the bankruptcy in time for the creditor to protect all of the rights granted it by the Bankruptcy Code. Section 523(a)(3)(A) specifically limits the requirement of notice to the protection of only one right—the right to file a proof of claim. Thus, only if the creditor did not receive notice, via the bankruptcy court or otherwise, of the debtor's bankruptcy case in time to file a proof of claim will the debt not be discharged. Otherwise, even if the creditor receives notice after, for instance, the § 341 meeting of creditors, or the deadline for objecting to a claimed exemption, or to the debtor's discharge, the creditor's debt is nonetheless dischargeable, and cannot be excepted from discharge by § 523(a)(3)(A) because the creditor could not act in time to exercise these rights. Only the right to file a proof of claim, as opposed to the right to participate in all aspects of the administration of the bankruptcy is protected by § 523(a)(3)(A).[22]

14. *See,* § 343.

15. *See,* § 522(1).

16. *See,* § 727(c)(1).

17. *See,* § 702.

18. *See,* Fed.R.Bankr.P. 9019.

19. *See,* § 726(a).

20. *See, e.g.,* § 342; *see also,* Fed.R.Bankr.P. 2002(a).

21. *See, e.g.,* Rule 4003(b) (deadline to file objection to exemptions); Rule 4004(a) (deadline to file complaint objecting to discharge); Rule 4007(c) (deadline to file complaint objecting to dischargeability).

22. We might as well follow up our initial mention of *In re Faden,* 96 F.3d 792 (5th Cir.1996), and get it out of the way. As mentioned in Judge Politz's dissent in the case, *Faden* excepted a debt from discharge because the creditor (the court concluded) was intentionally omitted from the debtor's schedules, notwithstanding that the case was originally opened as a no asset case (and therefore no claims bar date was set), and the creditor was ultimately added in time to file, and in fact did file a proof of claim by the subsequently set (after the discovery of assets) bar date for filing claims. The *Faden* case is simply an aberration, reflecting confusion between dischargeability of a particular debt and denial of discharge for a false oath, pursuant to § 727(a)(4). In fact, if recognized as authority in the circuit for any point, that point would be that federal courts are entitled, if they feel strongly enough, to create

Merely stating that the right "to file a proof of claim" is protected by § 523(a)(3)(A), however, begs the question regarding the purpose, and correlative operation, of § 523(a)(3)(A). The right, or ability, to file a proof of claim, standing alone, is nothing more than the right to place a piece or pieces of paper into the possession of the bankruptcy court. It is apparent that the right to file a proof of claim has a deeper significance, protected by § 523(a)(3)(A), that requires further inquiry into the bankruptcy claims process.

As stated previously, the debtor's ultimate desire when proceeding through bankruptcy is to obtain a discharge of his prepetition debts.[23] To obtain the discharge, however, the bankruptcy process requires a trade-off between the debtor and his creditors.

To begin with, the commencement of a bankruptcy case creates an estate.[24] The estate is comprised of all the debtor's interests in property as of the commencement of the case.[25] In essence, a debtor is required to relinquish, or to be ready to relinquish or surrender to the trustee all property held by him as of the moment of the filing of the bankruptcy petition, subject to the right to claim exemptions.[26]

The estate, in turn, is liquidated and distributed to the debtor's creditors in payment of their claims against him.[27] The debtor, by surrendering his assets, receives a discharge.[28] The creditors who, by the operative effect of the debtor's discharge, will be barred from further collection on pre-petition debts owed to them by the debtor,[29] receive the ability to share in the distribution of the debtor's estate.[30]

exceptions to discharge that exist nowhere in the Bankruptcy Code, through, one supposes, their equitable powers. *Faden* is not applicable to the facts before us, but we mention it because, though it stands outside Fifth Circuit precedent and the Bankruptcy Code, it could be read as establishing a more expanded version of § 523(a)(3)(A) than the one that exists in the Bankruptcy Code.

**23.** *See,* §§ 727(a), 1141(d)(1)(A), 1228(a), 1228(b), 1328(a), 1328(b).

**24.** *See,* § 541(a) ("the commencement of a case under section 301, 302, or 303 of this title creates an estate.").

**25.** *See,* 541(a)(1). The debtor's estate also is comprised of interests of the debtor and the debtor's spouse in community property, property recovered by the trustee from other entities, interests preserved for the benefit of the estate, inheritance, domestic property settlements, and life insurance benefits acquired within 180 days of the filing of the bankruptcy petition, the proceeds, rent and offspring of property of the estate, and interests in property which the estate acquires post-petition. *See generally,* § 541(a). The debtor, however, may exempt assets from property of the estate pursuant to § 522.

Section 541, as well as § 522, is applicable to chapters 7, 11, 12, and 13 of the Bankruptcy Code. *See,* § 103(a). However, Chapters 12 and 13 also include within the estate, in addition to that property delineated by § 541, property acquired after the commencement of the case which would have been property of the estate under § 541, and earnings of the debtor acquired after the commencement of the case. *See,* §§ 1207(a), 1306(a).

**26.** In a Chapter 7 case, the estate is administered by a trustee who takes possession of the estate. *See,* §§ 701, 704. In Chapter 11, 12, and 13 cases, the debtor may remain in possession of the estate. *See,* §§ 1107, 1207(b), 1306(b).

**27.** *See,* § 726. The Bankruptcy Code also allows a debtor to remain in possession of his property through a reorganization of his debts. *See, supra,* n. 26. Chapters 11, 12, and 13 allow the debtor a discharge is he reorganizes his debts in accordance with the provisions of either §§ 1123, 1129 (Chapter 11), §§ 1222, 1225 (Chapter 12), or §§ 1322, 1325 (Chapter 13).

**28.** *See,* § 727. Discharge in chapters other than Chapter 7, results from either the confirmation of a plan of reorganization in a Chapter 11 case, or from completion of the plan in a Chapter 12 or 13 case. *See,* §§ 1141(d)(1)(A), 1228(a), 1328(a). In certain situations a Chapter 12 or Chapter 13 debtor may receive a discharge without completion of a plan. *See,* §§ 1228(b), 1328(b).

**29.** *See,* § 524(a).

**30.** While Chapter 7 is the only chapter which specifically provides for a liquidation and distribution of the estate to the debtor's creditors, the other chapters of the Bankruptcy

In this manner, the Bankruptcy Code strikes a deal—the debtor, to free himself of pre-petition debts and start anew, must give up his assets (or, over time, pay an amount equal or greater to the amount creditors would have received had his assets been liquidated), while the creditor, who will no longer be able to avail himself of ordinary collection remedies, enjoys the right to satisfy some portion of his claim by partaking, on a pro rata basis with other creditors of the debtor, in the distribution of the debtor's estate (or to receive, over time, an amount equal or greater

than that which the creditor would have received had the assets been liquidated and distributed).

The right to share in the distribution of the estate, however, requires that a creditor have an allowed claim [31] against the estate.[32] Allowance of a claim is the gateway to participation in the distribution of the assets of the estate.

Rule 3002(a) provides, however, that "[a]n unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed...." [33] To be allowed, therefore,

Code use Chapter 7 as a benchmark for allowing the debtor to reorganize debts and obtain a discharge. In Chapters 11, 12, and 13, a plan of reorganization must provide that, *inter alia,* the creditors receive, over time, property or payments of a value equal to or greater than what they would have received had the debtor's assets been liquidated in a Chapter 7. *See,* §§ 1129(a)(7)(A)(ii); 1225(a)(4); 1325(a)(4).

**31.** "Claim" is defined by the bankruptcy code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." *See,* § 101(5).

**32.** *See, Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.),* 954 F.2d 1 (1st Cir. 1992) ("... allowance remains a prerequisite to distribution under the Bankruptcy Code."); *see also,* § 726(a)(1), (2), (3), (4); § 1222(a)(2); § 1225(a)(4), (5); § 1322(a)(2); § 1325(a)(4), (5); Fed.R.Bankr.P. 3021.

Chapter 7 distribution is controlled by § 726. While subparagraph (a)(1) of § 726 does not specifically refer to "allowed" claims (subparagraphs (a)(2), (a)(3), and (a)(4) all specifically refer to "allowed" claims), § 726(a)(1) provides for distribution to claims of a kind specified in § 507. Section 507, in turn, specifies that priority is given to certain kinds of claims only if the claims are "allowed" claims. *See,* § 507(a).

In addition, to be entitled to distribution under a plan in a Chapter 11 case, a claim must be allowed. *See,* Fed.R.Bankr.P. 3021 ("... after a plan is confirmed, distribution shall be made to creditors whose claims have been *allowed* ...") (emphasis added).

Although not explicit in Chapter 12 and 13 cases, participation in a distribution under a plan also requires allowance. In both Chapter 12 and Chapter 13 a plan must provide for

"the full payment ... of all claims entitled to priority under section 507 ..." §§ 1222(a)(2), 1322(a)(2). As noted above, claims entitled to priority under § 507 are those claims which are allowed. Further, a plan under Chapter 12 or Chapter 13 may be confirmed only if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each *allowed* unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title of such date." §§ 1225(a)(4), 1325(a)(4) (emphasis added); *see also,* §§ 1225(a)(5), 1325(a)(5) (allowed secured claims); §§ 1225(b)(1), 1325(b)(1).

**33.** While Rule 3002(a) generally provides that a *creditor* must file a proof of claim to be allowed, Rule 3002(a) also provides for exception under certain circumstances. *See,* Rule 3002(a) ("... except as provided in Rules 1019(3), 3003, 3004, and 3005."). Under Rule 1019(c) a case under either Chapter 11, 12, or 13 which is converted to a case under Chapter 7, filing a proof of claim in the Chapter 7 case is not necessary if the creditor had previously filed a proof of claim prior to conversion of the case. Additionally, in a Chapter 11 case, a debt which is scheduled, and not listed as disputed, contingent, or unliquidated, need not file a proof of claim. *See,* Fed.R.Bankr.P. 3003; *Cf.,* § 1111(a) ("a proof of claim is deemed filed under section 501 of this title for any claim or interest that appears in the schedules ..., except a claim ... that is scheduled as disputed, contingent, or unliquidated."). Rules 3004 and 3005 also provide exception to the requirement that a creditor file a proof of claim by allowing the debtor, trustee, or a surety/guarantor of the debt to file a proof of claim on the creditor's behalf.

The exception provided by Rules 1019(3), 3003, 3004, and 3005 do not eliminate the

unless one of the exceptions applies, a creditor must file a proof of claim. A proof of claim, once filed, is deemed allowed.[34] Although a creditor may have a right to receive payment from the debtor outside of bankruptcy, a creditor must file a proof of claim, evidencing that right to payment, to be entitled to share in the distribution of the estate. Thus, the end result of filing a proof of claim is that the proof of claim entitles the creditor to a portion of the debtor's assets, or the estate, if any are available.

■ By focusing on the ability of the creditor to file a proof of claim, Section 523(a)(3)(A) protects the creditor's right to participate in the distribution of the estate.[35] Section 523(a)(3)(A) accomplishes this result by use of a temporal phraseology, limiting the period within which notice of the bankruptcy case will be sufficient to discharge a debt.

To discharge a debt, i.e., to render § 523(a)(3)(A) inapplicable, a creditor must have notice of the bankruptcy case in time to permit the *"timely* filing of a proof of claim."[36] The use of the modifier "timely" indicates that some consequence, of benefit to the creditor, attaches to timely filed proofs of claim, as opposed to untimely proofs of claim.

The filing a proof of claim does not, *ipso facto,* entitle the entity which filed the proof of claim to participate estate distributions. Estate distributions are premised upon allowance of a particular claim.[37] A proof of claim may be disallowed under § 502 of the Bankruptcy Code, however, if such claim is untimely.[38] Specifically, § 502(b)(9) decrees that a court shall allow a claim, "except to the extent that ... *proof of such claim is not timely filed* ..."[39] At its core, then, the issue of timeliness devolves into an issue of allowance, because the requirement of timeliness,

requirement of a proof of claim, however. Rules 1019(3), 3004, and 3005 merely eliminate the requirement that a creditor file the proof of claim, while Rule 3003, read in conjunction with § 1111(a), deems the claim filed by the creditor if the claim is scheduled. Rule 3002(a), thus, requires the filing of a proof of claim for allowance of the claim.

34. *See,* § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects."). In Chapter 11 cases, actual filing of a proof of claim may not be necessary. *See,* § 1111(a) ("A proof of claim ... is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(1) or Fed. R.Bankr.P. 3003."). A proof of claim, once filed, is prima facie evidence of the validity of the debt. *See,* Rule 3001(f). Upon objection, however, a proof of claim may be disallowed if the claim is meets certain criteria: unenforceability, unmatured interest, assessed taxes in excess of the value of the property, unreasonable insider services, unmatured debt excepted from discharge under § 523(a)(5), excessive rent, excessive employee termination damages, reduction in credit on employment taxes, untimely claims, etc. *See,* § 502(b).

35. *Accord, Judd v. Wolfe,* 78 F.3d 110, 114–115 (3rd Cir.1996) ("... the fundamental right enjoyed in bankruptcy is the right to file

a proof of claim because filing a claim is obviously necessary in order to participate in the distribution of the estate's assets. Section 523(a)(3)(A) honors this right, by excepting from discharge debts owed to creditors who did not know about the case in time to file a claim.") (citation and footnote omitted).

36. § 523(a)(3)(A) (emphasis added).

37. *See, supra,* n. 32.

38. According to Rule 3002(c), a proof of claim is considered "timely" if filed within ninety-days of the date first set for the meeting of creditors under § 341. *See, supra,* n. 5. Thus, a claim filed outside the ninety-day period prescribed by Rule 3002(c), subject to the exceptions contained therein, is considered untimely and subject to disallowance under § 502(b)(9).

39. § 502(b)(9) (emphasis added). Section 502(b)(9) more fully provides:

(b) ... the court ... shall allow such claim in such amount except to the extent that—
(9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure.

pursuant to Rule 3002(c), acts as a substantive bar, via § 502(b)(9), to allowance of claims.

It is noteworthy, however, that an untimely filed claim is not absolute cause for disallowance. Section 502(b)(9) provides that an untimely claim should be disallowed, *except to the extent that a tardily filed claim is permitted under subsections (1), (2), and/or (3) of § 726(a).* The exception contained within § 502(b)(9) thus provides that late filed claims may be allowed in cases under Chapter 7, consistent with § 726(a).

Section 726(a), in turn, provides in pertinent part:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of this case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is

tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection . . .

A review of § 726 reveals that claims given priority under § 507 are allowed if filed prior to the date that the trustee commences distribution. Thus, a priority unsecured claim is allowed, pursuant to § 502(b)(9), whether or not the claim is filed within the ninety-day period prescribed by Rule 3002(c), as long as the claim is filed prior to distribution. Knowledge or notice of the bankruptcy by the bar date set through Rule 3002(c) is of no moment to whether the claim is allowed or disallowed.

In addition, § 726 provides that general unsecured claims, other than those which are given priority by § 507, are allowed, even if filed untimely. Under both § 726(a)(2)(C) and § 726(a)(3) late filed claims are allowed to participate in distribution of the debtor's estate, if the late filed claim is filed under § 501(a), which establishes the statutory right of a creditor and indenture trustee to file proofs of claim and of equity security holders to file proofs of interest. The difference between the two provisions, however, emanates from a distinction between creditors with notice or knowledge of the bankruptcy and creditors who do not have notice or knowledge of the bankruptcy.

Section 726(a)(2)(C) provides that claimants who did not receive notice of the bankruptcy case are entitled to file a proof of claim which will be allowed as if the creditor had notice and had timely filed a proof of claim. Creditors, however, who had knowledge of the bankruptcy case in time, but who failed to file within the Rule 3002(c) period, will still be able to have their proofs of claim allowed, and thereby participate in the distribution of assets, but on a level subordinate to the claims of creditors who did filed proofs of claim after the bar date because they did not receive notice of the pendency of the debt-

**744**

or's bankruptcy case in time to meet the bar date.

Effectively, § 726(a)(2)(C) places creditors who did not receive notice sufficient to allow the timely filing of a proof of claim on a par equal to that which they would have enjoyed had they received notice from the outset of the bankruptcy case, and filed a proof of claim by the bar date. In this respect, a tardily filed claim under § 726(a)(2)(C) becomes the functional equivalent of a timely filed claim. The claim, though technically tardy, is allowed, and permitted status tantamount to that accorded timely filed proofs of claim.

The exception within § 502(b)(9) applies only in Chapter 7 cases, as § 726 only applies in Chapter 7 cases.[40] Thus, claims filed late in cases under Chapters 11, 12, and 13 do not fall within the ambit of the exception to disallowance in § 502(b)(9).

The full operation of § 523(a)(3)(A) is laid bare. The requirement within § 523(a)(3)(A) of notice sufficient to allow the "timely" filing of a proof of claim, protects the right of the creditor to participate in the distribution of the debtor's estate. Creditors who do not file "timely" proofs of claim are generally prohibited from sharing in the debtor's assets when such are disbursed under the Bankruptcy Code. A creditor becoming aware of the bankruptcy proceeding after the expiration of the period within which proofs of claim may be "timely" filed is deprived of its right to participate in distributions. Therefore, creditors who are deprived of the right to file a timely proof of claim, and, thereby, participate in the distribution of the debtor's estate, may have the debts held against the debtor excepted from the debtor's discharge.[41]

However, in Chapter 7 cases, the right to share in the distribution of the debtor's assets is specifically protected for those creditors who did not receive notice of the bankruptcy in time to file "timely" proofs of claim. The equivalency of status given to those who become aware of the bankruptcy prior to distribution effectively makes a technically tardy claim a timely claim for purposes of distribution, if the creditor did not have notice prior to the bar date.

Section 523(a)(3)(A), then, is inapplicable to the situation where the creditor receives notice of the bankruptcy case too late to allow the filing of a claim by the bar date, but in time to allow the creditor to file a proof of claim prior to distribution. The creditor's claim will be accorded a station on equal footing with that of creditor's who filed timely proofs of claim. The creditor's right to participate in the distribution of the debtor's assets is not affected, as it will have the same rights to a portion of the debtor's estate as it would have had if it had been on notice of the pendency of the bankruptcy case from the outset.[42]

**40.** *See,* § 103(b); *see also, United States v. Waindel (In re Waindel),* 65 F.3d 1307, 1312 (5th Cir.1995) (Duhe, J., concurring); *accord, Gullatt v. United States (In re Gullatt),* 169 B.R. 385, 390–391 (M.D.Tenn.1994); *United States v. Cole (In re Cole),* 146 B.R. 837, 841 (D.Colo.1992) ("section 726(a)(2)(C) is not applicable in a Chapter 13 case, and there is no similar treatment giving recognition to tardily-filed claims in Chapter 13."); *In re Dennis,* 230 B.R. 244, 248–249 (Bankr.D.N.J.1999) ("If the mere mention in chapter 5 of an exception for late claims in chapter 7 automatically extended to the other chapters, it would be an exception without meaning, for the exception would swallow the Rule.").

**41.** Section 523(a)(3) does not apply to a Chapter 13 discharge granted under § 1328(a). *See,* §§ 523(a), 1328(a)(2).

**42.** *Accord, North River Ins. Co. v. Baskowitz (In re Baskowitz),* 194 B.R. 839, 845 (Bankr. E.D.Mo.1996); *Southern Pac. Land Co. v. Kuhr (In re Kuhr),* 132 B.R. 421, 423–424 (Bankr.E.D.Cal.1991); *Homestate Ins. Brokers of Alaska, Inc. v. Brosman (In re Brosman),* 119 B.R. 212, 214 (Bankr.D.Alaska 1990); *D & L Repair, Inc. v. Sandoval (In re Sandoval),* 102 B.R. 220, 222 (Bankr.D.N.M.1989); *In re Hendricks,* 87 B.R. 114, 116 (Bankr.C.D.Cal. 1988); *Butt v. Hartford Ins. Co. (In re Butt),* 68 B.R. 1001, 1003–1004 (Bankr.C.D.Ill. 1987); *In re Beshensky,* 68 B.R. 452, 454–455 (Bankr.E.D.Wis.1987). The Court particular-

The Court is aware that other courts have concluded that § 726(a)(2)(C) merely provides a bonus, or lagniappe, to the creditor whose debts were left unscheduled but who became aware of the bankruptcy in time to participate in the distribution of the debtor's estate.[43] These courts have found that § 726(a)(2)(C) supplements the relief provided in § 523(a)(3)(A). They have concluded that allowing the discharge of unlisted debts, because they would be paid as timely filed claims if the claims are filed prior to distribution, would render § 523(a)(3)(A) meaningless.[44]

This analysis, or maybe conclusion, however, overlooks the fact that § 523(a)(3)(A) is applicable to chapters other than Chapter 7. A creditor who does not receive notice of the case in time to file a timely proof of claim will not have his debt discharged in a Chapter 11, 12, or 13 case because § 726(a)(2)(C) does not apply in those chapters. In addition, a debt of a creditor who does not receive notice of the bankruptcy in time to participate in the distribution of the debtor's estate in a Chapter 7 case is, likewise, not subject to discharge. Contrary to the assertion within *Bosse*, § 523(a)(3)(A) is not eviscerated

by discharge of debts which fall within the reach of § 726(a)(2)(C).[45]

Additionally, these courts premise the lagniappe view on the use of the word "tardily" in § 726(a)(2)(C).[46] According to *Hauge*, the use of "tardily" and "timely" contemplate a material difference in classification which must be enforced. This Court finds the reasoning of *Hauge* to be improperly focused upon establishing a static definition of the word "timely", while ignoring the statutory fact that a claims bar date plays a different role in a chapter 7 case, and that the word can, with respect to its relation to a temporal event (the act of filing a claim) have a different meaning in a chapter 7 case and not change the consistency of the protection afforded creditors by § 523(a)(3)(A).

Section 726(a)(2) sets forth claims which will participate in second tier distribution. The description within that section of "tardily filed" claims does nothing more than grant such claims the exact right to distribution given those who had the ability to, and did, file proofs of claim timely. Section 726(a)(2) does make a distinction between "timely" and "tardily" filed claims. However, it is a distinction without meaning in the context of § 726(a)(2).

---

ly agrees with the trenchant analysis in *Kuhr*, wherein Judge Dorian stated:

> Claim filing in a Chapter 7 case is therefore solely an element of dividend distribution, and timeliness is employed as a standard for determining which creditors will share in asset distribution and which creditors will not. Under § 726(a)(2) "timely," in terms of receiving payment, places on an equal footing anyone who files "timely" under Bankruptcy Code sections 501(a), (b) and (c)—"timely" being defined for purposes of those subsections by Bankruptcy rules 3002(c) and 3004—or who files "tardily" under section 501(a), provided that the creditor "did not have notice or actual knowledge of the case in time for timely filing of a proof of claim" and "proof of such claims is filed in time to permit payment of such claim."
>
> "Timely" under section 523(a)(3) can only mean filed in time to receive on an equal footing distribution of any dividends paid pursuant to section 726(a). Any other

meaning defies logic and common sense. *Kuhr*, 132 B.R. at 423–424.

**43.** *See, e.g., Hauge v. Skaar (In re Hauge)*, 232 B.R. 141 (Bankr.D.Minn.1999); *Spilka v. Bosse (In re Bosse)*, 122 B.R. 410 (Bankr. C.D.Cal.1990).

**44.** *See, Bosse*, 122 B.R. at 416.

**45.** In fact, given the paucity of administered chapter 7 cases, and the widely accepted practice of opening all chapter 7 cases as no asset cases so that there is no claims bar date set by the Notice of Commencement of Case, the chapter 7 arena is not the one wherein § 523(a)(3)(A) is most operative. A statute that applies in all chapters though is limited in its application to one of the chapters by means of an express statutory provision applicable only to the one chapter, is hardly eviscerated.

**46.** *See, Hauge*, 232 B.R. at 149, n. 10.

Section 726(a) must distinguish between "timely" and "tardily" filed claims, because generally speaking, the distributive priority scheme is constructed upon a time line, and the filing of claims is described according to and along that time line. Specifically, "timely" filed claims are those filed within the pre-bar date chunk of time. Those must be distinguished from claims filed after the bar date by some language; the Bankruptcy Code chooses "tardily." Second, the statute contains a further demarcation between two categories of claims that are filed after the bar date, and are, therefore, from a time line perspective, tardy.

Section 726(a)(3) requires that "tardily" filed claims held by creditors who received notice in time to "timely" file a proof of claim are accorded a lower priority of distribution than that of claims covered by § 726(a)(2). As noted above, however, the "tardily filed" claim of § 726(a)(2)(C) is the functional equivalent of a timely filed claim. A distinction is necessary only to the extent that it determines what claims fall within the purview of § 726(a)(3). The reasoning of *Hauge* places needless emphasis on form and procedure rather than on the underlying substance of § 523(a)(3)(A). In essence, *Hauge's* interpretation of the significance of the term "tardily" gives the necessary description of the filing of the claim in a time line context a substantive meaning that is directly contrary to the actual substantive effect under the statute. A claim that is described as tardily filed because the distributive priority scheme begins with claims filed before the bar date is converted by *Hauge,* substantively, into a claim that should be dealt with as though is could not have been filed, when the actual effect of the statute is to pay it as though it had been filed prior to the bar date.

The lagniappe courts ultimately abide the notion that a creditor who does not get notice by the claims bar date can file a tardily filed claim, participate as though

the claim was filed timely, and thereafter pursue the debtor to collect the nondischargeable debt.[47] The problem with this is not the sharing in the estate by the creditor whose debt not discharged; the problem is the exalting of a date, without consideration of the function of the date. The lagniappe courts, therefore, by separating the claims bar date from the function of a claims bar date within the distribution scheme established by the Bankruptcy Code in Chapter 7 cases, have exiled the purpose of the statute (which can be gleaned from the language itself) to inanity-land. For the lagniappe courts it is of no moment that the creditor whose claim is to be paid as though timely filed under § 726(a)(2)(C); what is important is whether the creditor had knowledge of the case by the relevant Tuesday, so as to be able to present the piece of paper that is the proof of claim to the office of the clerk of court by that relevant Tuesday.

In concluding that the word "timely" as used in § 726(a)(2) (referring, as it has to, to the date by which a claim is to be filed, if it is to be filed by the bar date) must control the meaning of the use of the term ("timely") in § 523(a)(3)(A), ignores the difference between chapter 7 and the other chapters of the Bankruptcy Code, wrought by § 726(a). The claims bar date is, in the other chapters of the Bankruptcy Code, a bar to allowance; a claim late is entitled to no distribution from the estate (whether the creditor did or did not have notice). So, with respect to Chapters 11, 12, and 13, a "timely" filed claim is (and must be) one filed by the bar date. Timeliness is a precondition to distribution, which is premised upon allowance. We have noted how it was necessary for Congress to delineate between Chapter 7 claims filed before and after the claims bar date, and to call those filed after the bar date, well, something. The use of the word "tardily" does not require that the word "timely" as used in

47. *See, Bosse,* 122 B.R. at 416.

§ 523(a)(3)(A) mean "filed before the bar date," because the word "tardily" was chosen due to the need for being able to describe which claims were going to be treated as timely and which were not, within a proceeding that (excuse this) proceeds in a linear fashion, along a day by day time line.

The lagniappe courts, in the name of the purity of plain meaning statutory analysis have merely picked a particular date as the constant, with all the analytical consequences flowing from this fixed argumentative point. The effect is to ignore the structural difference between Chapter 7 and the other chapters of the Bankruptcy Code, and to ignore, as well, the different statutory function played by the Chapter 7 proof of claim. We have chosen as our fixed point the statutory objective to be obtained by the filing of a Chapter 7 proof of claim, which is to be paid at the appropriate level of priority, the level at which payment would have been made if appropriate notice had been given. This objective is constant throughout the chapters of the Bankruptcy Code; creditors through § 523(a)(3)(A) are entitled to receive notice of the case in time to file a claim that will result in distribution, as though notice had been given at the commencement of the case.

In the Chapter 7 case, because the unscheduled creditor with no notice will be treated as a timely filed claim if the creditor receives notice in time to, and does, file a proof of claim before distribution, § 523(a)(3)(A) will not except these debts from discharge on the basis of their being described as "tardily filed" in § 726(a)(2)(C). The function of the use of the phrase "tardily filed" is to cleave those claims to be treated as timely from those that are not, to cast down to an inferior level those claims who are to be subordinated because of the combination of notice and creditor inaction.

Returning to the case at hand, when Ricks filed for bankruptcy under Chapter 7, she did not originally schedule the debt to Lott Furniture. It is undisputed that the failure by Ricks to schedule the debt was not the result of fraud or reckless indifference on the part of Ricks, rather the failure stems from mere inadvertence on her part.[48] After the expiration of the ninety-day period under Rule 3002(c), Lott Furniture became aware of Ricks bankruptcy case. At the time Lott Furniture became aware of Ricks bankruptcy, the Chapter 7 trustee was, and still is, administering assets of Ricks' estate. The trustee had not, and has not, made a distribution to creditors under § 726(a).

Because Lott Furniture became aware of Ricks bankruptcy before any § 726(a) distribution, Lott Furniture had, and has, the ability to file a proof of its claim which, though untimely under Rule 3002(c), would be treated as though it had been timely filed. Lott Furniture's right to participate in the distribution of the debtor's estate remains unaffected by the claims bar date.

### B. LEGISLATIVE HISTORY AND EQUITABLE PRINCIPLES: NOT NEEDED, BUT IF RESORTED TO ARE FOUND TO SUPPORT OUR STATUTORY ANALYSIS

Many courts have attempted to ascertain the extent and operation of § 523(a)(3)(A) by focusing on the legislative history surrounding its enactment, on the basis that § 523(a)(3)(A) is ambiguous.[49] This Court does not believe that resort to legislative history is necessary, as the result reached herein flows from a straightforward reading of the statute and

---

**48.** We note that the debt apparently arises from a transaction many years previous (judgment allegedly obtained on the debt in 1989) to the filing of the bankruptcy case in 1998.

**49.** See, e.g., Stone v. Caplan (In re Stone), 10 F.3d 285 (5th Cir.1994).

its interplay with other pertinent provisions of the Bankruptcy Code.[50]

Though not instrumental in its decision, we take solace from circumstances surrounding the genesis of present § 523(a)(3)(A) and the interpretation of its predecessor under the Bankruptcy Act of 1898 ("Bankruptcy Act"),[51] and offer the following discussion of legislative history and even the resort by other courts to equitable principles, for emphasis and support for our analysis, rather than for substantive rationale.

Under § 17(a) of the Bankruptcy Act:

a discharge in bankruptcy shall release a bankrupt from all of his provable debts ... except such as ... have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.

Although § 17(a) of the Bankruptcy Act refers only to those debts not scheduled in time for proof and allowance, the Supreme Court, in *Birkett v. Columbia Bank*,[52] interpreted § 17(a) of the Bankruptcy Act quite strictly.

In *Birkett*, a creditor of the debtor learned of the bankruptcy after the entry of the order of discharge. The debtor argued that the failure to list the debt was inadvertent and that the creditor learned of the bankruptcy in time to prove its claim and to attempt to revoke the discharge (the facts establish that the debtor's assertions are borne out by the facts).[53] Therefore, according to the debtor, the creditor had actual knowledge of the bankruptcy proceedings as the phrase was used in § 17(a) of the Bankruptcy Act.

The Supreme Court disagreed with the debtor. The Court held that neglect or inadvertence on the part of the debtor is irrelevant to the question of dischargeability under § 17(a) of the Bankruptcy Act. Moreover, as to the debtor's contention that the creditor's actual knowledge of the case came in time to afford the creditor the right to have its claim proven and allowed, the Court held:

Actual knowledge of the proceedings, contemplated by the section, is a knowledge in time to avail a creditor of the benefits of the law,—in time to give him an equal opportunity with other creditors,—not a knowledge that may come so late as to deprive him of participation in the administration of the affairs of the estate, or to deprive him of dividends (§ 65).[54]

Note that the Supreme Court expanded the meaning of "actual knowledge of the proceedings in bankruptcy" as the phrase is a specific limitation of the exception to discharge contained in § 17(a). The language clearly links "actual knowledge" with the creditor having been scheduled in time for proof and allowance, and establishes that a plain reading of the statute would have required that the Court sustain the debtor's position. This expansive reading of the "actual knowledge" phrase is grounded in the notion of the Court that a creditor should have knowledge of the proceedings in time to lose no rights granted by the bankruptcy law (perhaps the Court, writing in 1904, believed enough had already been lost to the bankruptcy process, itself). This notion is expressed in the subtle carving up of the objective of creditor knowledge into a two pronged grouping of rights—participation in the administration of the affairs of the estate is set apart from the right to receive dividends. Lack of knowledge, then, because

---

**50.** *Cf., United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961), *City of Rome v. United States*, 446 U.S. 156, 100 S.Ct. 1548, 1573, 64 L.Ed.2d 119 (1980) (Powell, J., dissenting).

**51.** *See*, 30 Stat. 544 *et seq.*

**52.** 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904)

**53.** *See*, §§ 65, 15 of the Bankruptcy Act, 30 Stat. 563, 550, respectively.

**54.** *Birkett*, 25 S.Ct. at 40.

it would deprive the creditor of the right to participate in administration **and** the right to receive dividends, was to be punished by means of exception of the debt from discharge, if the creditor was deprived of **either category of right.**

The Second Circuit, in *Milando v. Perrone*,[55] expounded upon the rationale of the Supreme Court in *Birkett.* In *Milando*, the debtor moved to reopen his no-asset bankruptcy case to schedule a debt inadvertently left off the original schedules. The lower court had ruled that the debtor could amend his schedules to discharge the omitted debt, finding that the creditor could not have been harmed because the estate held no assets. The Second Circuit, however, rejected this assertion, and found that § 17(a) of the Bankruptcy Act admitted of no exception to the rule, as enunciated by the *Birkett* Court, that "if a creditor is to be barred [by operation of the discharge] he must receive information of the bankruptcy proceeding in time to participate in the administration of the estate **as well as to share in the dividends.**"[56] The two pronged nature of the creditor rights to be protected by § 17(a), is clearly reaffirmed by the Second circuit.

Under *Birkett* and *Milando*, then, it looks like discharge would have been precluded under § 17(a) of the Bankruptcy Act if the creditor did not receive knowledge of the case almost contemporaneously with the filing of the petition for bankruptcy, as a creditor's right to participate meaningfully, which is seen as distinct from and additional (or even superior) to the right to receive dividends would seemingly commence with the first notice sent to those parties whose claims were scheduled.

Thereafter, the Fifth Circuit, in *Robinson v. Mann*,[57] determined that the equitable powers of the bankruptcy courts provided the power to allow for out-of-time amendment to schedules, under certain circumstances, to cure previously omitted debts. Although not directly dealing with the issue of dischargeability of an unscheduled debt, the implication of schedule amendments is that allowance of the amendment would result in dischargeability of the debt newly scheduled. *Robinson* required analysis of three equitable factors: 1) the reason for the omission; 2) the disruption amendment would wreak upon the courts; and 3) the degree of prejudice to all creditors.

Against this backdrop of statute and jurisprudence on the dischargeability of unscheduled debts, Congress determined to revise § 17(a) of the Bankruptcy Act. The successor to § 17(a) of the Bankruptcy Act is the present § 523(a)(3)(A). The legislative comments to § 523(a)(3)(A) indicate that Congress wished to depart from the *Birkett* rule. In fact, as reported by the House and Senate Judiciary Committees, § 523(a)(3)(A) "follows the present law, but clarifies some uncertainties generated by the case law construing 17(a)(3) . . . ."[58] The House Judiciary Committee Report specifically referred to the uncertainties Congress wished to clarify by stating that § 523(a)(3)(A) "is intended to overrule *Birkett v. Columbia Bank.*"[59]

Although Congress asseverated its desire to overrule *Birkett,* further legislative comments seemingly muddle the extent to which Congress wished to change the prior law through the overruling of *Birkett* and the enactment of § 523(a)(3)(A). The House and Senate Judiciary Reports aver that the intent of § 523(a)(3)(A) is to ex-

**55.** 157 F.2d 1002 (2nd Cir.1946)

**56.** *Id.* at 1004 (emphasis added).

**57.** 339 F.2d 547 (5th Cir.1964)

**58.** *See,* S.Rep. No. 989, 95th Cong., 2d Sess. (1977), 1978 U.S.C.C.A.N. 5787, 5864;

H.R.Rep. No. 595, 95th Cong., 2d Sess. (1977), 1978 U.S.C.C.A.N. 5963, 6320.

**59.** H.R.Rep. No. 595, 95th Cong., 2d Sess. (1977), 1978 U.S.C.C.A.N. 5963 (citation omitted).

cept debt "from discharge if it was not scheduled in time to permit timely action by the creditor to protect his rights." [60] Recall, however, that the holding of *Birkett* was premised upon the conclusion that the creditor at issue did not receive notice in time to participate meaningfully in the administration of the .bankruptcy estate; the fact that the creditor obtained knowledge in time to have its claim proven and allowed was of no moment to the court. In essence, the *Birkett* Court held that the creditor who did not receive notice in time to protect all the rights granted by the Bankruptcy Act could not meaningfully participate in the proceedings, and that retention of the right to have a claim proven and allowed would not insulate the debtor from a judgment excepting the debt from discharge.

The wording of § 523(a)(3)(A) leads us to our conclusion as to what in *Birkett* was overruled by the statute. This first subsection provides protection of one right— the right to file a proof of claim, and thus participate in the distribution of the estate. The second subsection of § 523(a)(3) provides the remaining scope of its protection and of the remaining scope of the extent to which Congress has determined that a creditor must have the right to participate. As mentioned (and not before us here), § 523(a)(3)(B) protects the rights of credi-

tors who have claims under certain specific provisions of § 523(a), by absolving them of the deadline for bringing their complaints, unless actual knowledge is obtained in time to bring a complaint timely. The statutory scope of creditor protections then is a limited one; the scope is much more limited than the expanded scope of protections granted by *Birkett*.

The *Birkett* interpretation of § 17(a) of the Bankruptcy Act requiring notice sufficient to participate in all aspects of the administration of the bankruptcy estate has been supplanted by the specific protection, within § 523(a)(3)(A), of the ability to participate in the distribution of the debtor's estate on the basis of a proof of claim.

The Court is aware of the Fifth Circuit's pronouncement in *Stone* that Congress adopted the *Robinson* framework for § 523(a)(3) cases, that the intent of Congress to legislatively overrule *Birkett* indicated its desire to validate the Fifth Circuit's approach to dischargeability of unscheduled debt announced in *Robinson*.[61] *Stone*, thus, interpreted the legislative comments surrounding the enactment of § 523(a)(3) to be a post hoc justification for the court's prior renegade departure from controlling Supreme Court authority.[62]

---

**60.** *See,* S.Rep. No. 989, 95th Cong., 2d Sess. (1977), 1978 U.S.C.C.A.N. 5787, 5864; H.R.Rep. No. 595, 95th Cong., 2d Sess. (1977), 1978 U.S.C.C.A.N. 5963, 6320.

**61.** *See, Stone,* 10 F.3d at 290 ("We therefore hold that section 523(a)(3) must be construed with an eye toward the equitable principles which underlie bankruptcy law: The statute must be applied consistently with the guidance set forth in *Robinson v. Mann.*").

**62.** There is, of course, another way of reading the Congressional intent. It could be that Congress meant to strike a new path with statutory language that overrules both *Birkett* and *Robinson*. Clearly the unwillingness of the *Birkett* Court to read § 17(a) as designed to protect a creditor's right to participate in distributions by filing proofs of claim was overruled. Section 523(a)(3)(A) can just as easily be seen to overrule *Robinson* as well.

Recall that *Robinson* did not directly deal with dischargeability, but with amendments to schedules. The implication (and post *Robinson* interpretation) however, is clear. The only reason to amend schedules to add creditors is to have debts discharged. Though *Robinson* was a no asset case, it had been opened as an asset case and a claims bar date had been set. Of course, the bar date had run, as the case had been closed. Interpreting courts now figure that the new debts were added, on the basis of equitable principles, and thereafter discharged. The statute as now written could easily be read to overrule the *Robinson* equitable approach, as requiring that even in cases opened as asset cases but closed as no asset cases, if knowledge of the bankruptcy case is not obtained until after the closing of the case, the debt is excepted from discharge because it was not obtained until after it was possible to receive a distribution. However, there is another provision of the

Based on a straightforward reading of § 523(a)(3)(A) and affiliated provisions of the Bankruptcy Code as applied to the particular facts of this case, however, the Court does not believe that resort to the *Robinson/Stone* equitable analysis is necessary. Nevertheless, for the sake of completeness, the Court notes that the *Robinson/Stone* analysis supports the Court's decision regarding the dischargeability of the debt owed by Ricks to Lott Furniture.

The *Robinson* Court articulated that a court must undertake three equitable considerations: (1) the circumstances attendant to the failure to originally list the creditor; (2) the degree of disruption which would result from allowing the amendment, and; (3) whether any creditor would be prejudiced by the amendment.[63]

First, as with the debt at issue in *Stone*, Ricks failure to schedule the debt was the result of inadvertence, not fraud or intentional design. Second, no disruption will result from allowing Lott Furniture to file a proof of claim. The case has not been closed, and therefore, no administrative "re-opening" is necessary.

Finally, Lott Furniture will suffer no prejudice by allowing the debt to be discharged. Had Lott Furniture received notice of the debt contemporaneous with the filing of the bankruptcy, it could have done no more than receive that which it is permitted under § 726(a)(2)(C). As the *Stone* Court stated, "the [creditors'] rights to participate in dividends would not be any different had they been listed first on the [debtor's] schedules."[64] Here, it is possible for the creditor to receive a distribu-

tion if the other unsecured creditors receive a distribution. The Bankruptcy Code says so. The creditor cannot be prejudiced by being treated the way the Bankruptcy Code provides that it be treated.

Moreover, other creditors will not be prejudiced. Although they could receive more in pro-rata distribution than they might if Lott Furniture files a claim and receives a distribution under § 726(a)(2)(C)(ii), creditors do not have a right to a certain amount of distribution from the estate, but are entitled only to a pro-rata portion of the estate with all other creditors allowed the same priority of distribution. This right has not been compromised, because the statute is the statute, and it preexisted this bankruptcy case. Though unnecessary, analysis of the *Robinson/Stone* factors strongly supports the conclusion that the debt owed by Ricks to Lott Furniture should be discharged.

For the foregoing reasons, the Court holds that Ricks' debt owed to Lott Furniture is **DISCHARGEABLE.** A separate judgment will issue.

---

Code that may provide the Fifth Circuit analytical ground for believing that *Robinson* still has legs, at least in the limited sphere of cases opened as asset cases but subsequently closed as no asset cases. Because this Court likely will be the court to decide such a case, since it opens all its chapter 7 cases as asset cases,

and because it cannot remember ever having issued a decision on the question, it should be say no more here.

**63.** *See, Robinson,* 339 F.2d at 550.

**64.** *Stone,* 10 F.3d at 291–292.