**In re Michael BOSSE, Roseanne Bosse dba Frogge Motors and J & B Auto Paint and Body Shop, Debtors.**

**Herbert SPILKA dba Data Funding, Plaintiff.**

**v.**

**Michael BOSSE, Roseanne Bosse, dba Frogge Motors and J & B Auto Paint and Body Shop, Defendants.**

**Bankruptcy No. LA 88–17667RR. Adv. No. LA 89–0719RR.**

United States Bankruptcy Court, C.D. California.

Dec. 28, 1990.

Daniel B. Spitzer, Encino, Cal., for plaintiff.

Kenneth B. Rodman, Westlake Village, Cal., for defendants.

## AMENDED MEMORANDUM OF OPINION

ROBIN L. RIBLET, Bankruptcy Judge.

The matter before the Court is upon the Complaint of the plaintiff, Herbert Spilka, for a determination that his claim against the debtors is nondischargeable under 11 U.S.C. § 523(a)(3). Trial in the matter was held on November 16, 1989 and the decision taken under submission. The following shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### FACTS

The debtors herein, Michael and Rosanne Bosse, formerly operated an automotive sales business in which they used certain computer equipment leased from the plaintiff through his sole proprietorship, Data Funding.

On June 15, 1988, Michael Bosse informed Spilka that he was terminating his business, Frogge Motors, and that Spilka should retake possession of his equipment. At that time, Bosse also informed Spilka that he intended to file bankruptcy. On or about June 18, 1988, Spilka came to the business premises of Frogge Motors and retrieved his computer equipment.

Subsequently, Spilka discovered that the computer equipment would not function without a "password" utilized by the debtors. Without knowledge of the password, Spilka could not lease the equipment to any other customer. Spilka made several unsuccessful attempts to contact the debtors,

including Katherine Kratz, Mrs. Bosse's mother, who functioned as the business manager for Frogge Motors. Mrs. Kratz ultimately spoke with Spilka and advised him of the operational password. Spilka never tried to use the equipment after receiving the password.

On August 19, 1988, the Bosses filed their chapter 7 petition. Their schedules and list of creditors neither listed the debt owed to Spilka nor named him or his d/b/a, Data Funding, as a creditor. Their schedules did, however, list DCI Computer Systems Inc. ("DCI"), as having a claim in the amount of $345 for services. DCI was the original supplier of the computer equipment who had assigned its lease to Spilka. The debtors were under the mistaken belief that DCI and Data Funding were the same business and that Data Funding was merely a d/b/a for DCI. The omission of Data Funding or Herbert Spilka from the debtors' schedules was an inadvertent good faith mistake.

The Clerk of the Bankruptcy Court set November 22, 1988, as the last day for filing complaints to determine the dischargeability of debts under 11 U.S.C. § 523(a)(2), (4), or (6). Furthermore, January 3, 1989 was set and noticed as the bar date for filing proofs of claim.

Meanwhile, without notice or actual knowledge of the filing of the bankruptcy by the Bosses, Spilka filed a lawsuit against the debtors in Los Angeles Municipal Court for breach of the lease agreement, seeking damages totalling $11,550 plus interest. He had difficulty locating the Bosses and, as a result, did not serve his complaint on them until January 1989. It was not until February 10, 1989, after both the claims and dischargeability complaint deadlines had passed, that Spilka's counsel received a call from the debtors' counsel advising Spilka of the bankruptcy filing.

## DISCUSSION

To be determined in this adversary is whether Spilka's debt against the Bosses is dischargeable in their chapter 7 case. The discharge of a debt which is not scheduled is controlled by 11 U.S.C. § 523(a)(3). The section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request....

Before analyzing the case law construing subparagraphs (A) and (B) of section 523(a)(3), it must be determined whether Spilka had "notice or actual knowledge" prior to either of the relevant bar dates, since lack of knowledge is a prerequisite to a finding of nondischargeability.

It is the debtors' contention that Spilka had "actual knowledge" within the meaning of § 523(a)(3) because Michael Bosse advised Spilka in a telephone conversation in June of 1988 that he intended to file bankruptcy. Based on this conversation, the debtors argue that Spilka was on inquiry notice and should have kept abreast of developments relative to that filing. The debtors would have the court impose on Spilka the duty to search court files on an ongoing basis having once been advised of the debtors' intention. This court declines to impose such a duty.

While it is true that an unscheduled creditor with actual notice of the bankruptcy must inquire as to bar dates for filing nondischargeability complaints and proofs

of claim, *In re Price,* 79 B.R. 888, 891 (Bankr. 9th Cir.1987), *aff'd,* 871 F.2d 97 (9th Cir.1989), there must be actual notification that a bankruptcy has been filed and the venue of that filing. The debtors rely particularly on *In re Gregory,* 705 F.2d 1118 (9th Cir.1983). That reliance is misplaced.

■ The creditor in *Gregory* received from the court the initial "Order for Meeting of Creditors" but did not receive a copy of the proposed plan of reorganization. When the creditor's debt was discharged under the plan the creditor complained, alleging that the failure of notice deprived it of constitutional due process. The Ninth Circuit disagreed and imposed on the creditor the duty of inquiring about the impact of the bankruptcy upon its claim. The creditor could not merely bury its head in the sand and ignore the proceeding.

In contrast to the facts here, the creditor in *Gregory* had actual notice of the filing of the bankruptcy and the venue of that filing. In the case at hand there was absolutely no official or actual notice to Spilka prior to February 10, 1989, at which time the debtors' counsel contacted Spilka's counsel by phone and for the first time advised the creditor that a petition had, in fact, been filed the previous August. As a result, the only tenable conclusion is that Spilka received neither notice from the court nor knowledge in fact of the Bosses' bankruptcy filing in sufficient time to file a timely proof of claim or to file a timely request for a determination that his claim was nondischargeable under 11 U.S.C. § 523(a)(2), (4), or (6).

The facts of this case are far more similar to those of *In re Stratton,* 29 B.R. 93 (Bankr.W.D.Ky.1983), wherein the unlisted creditors, attending a neighborhood function, learned in conversation that the debtors were experiencing financial difficulties and might have filed for bankruptcy relief. The creditors there received no further corroboration of the rumor. The court in that case had little trouble dismissing the debtor's contention that the creditors had actual knowledge, holding:

The unsubstantiated rumor relating to the debtors' financial condition is insufficient to be generally equivalent to legal notice sufficient to permit the creditor to be apprised as to the time and place of the bankruptcy filing and to participate in its administration.

*In re Stratton,* 29 B.R. at 95. *See also, Lashover v. Audler,* 171 So.2d 834, 836 (La.App.1965) (The degree of knowledge required in nondischargeability litigation is "more than the knowledge which might result from a casual reference to a bankruptcy in an off-hand manner during a conversation attendant upon a chance meeting. It means knowledge of facts at least sufficient to apprise the creditor that a proceeding is actually commenced and where the proceeding is pending....").

In the case at hand Michael Bosse merely expressed his intent to file bankruptcy. Intent to file and actual filing are two different matters, intention falling within the realm of rumor or speculation as in *Stratton.* Accordingly, the analysis must continue in order to determine whether Spilka's claim is nondischargeable under either § 523(a)(3)(A) or (B).

■ Spilka's Complaint alleges he is entitled to relief under § 523(a)(3)(B) merely because he was not advised of the Bosses' bankruptcy early enough to file a timely request to determine his claim to be nondischargeable. However, this allegation alone is inadequate to allow such a determination. The Ninth Circuit Bankruptcy Appellate Panel has addressed this issue directly and its analysis is persuasive.

In *In re Lochrie,* 78 B.R. 257 (Bankr. 9th Cir.1987) the Appellate Panel held that § 523(a)(3)(B) does not create a separate exception from discharge merely for the debtor's failure to schedule a creditor. The creditor must independently have a cause of action which would be nondischargeable under section 523(a)(2), (4), or (6), and must prove that cause of action. A mere allegation of such cause of action is not sufficient to render the claim nondischargeable. The court concluded:

· Absent prejudice to the creditor by reason of omission from the schedules, the

creditor must prove its cause of action under § 523(a)(2), (4), or (6), in order to prevail under § 523(a)(3).... In view of the policy in favor of discharge and a fresh start for the debtor, we hold that the creditor is required to make a showing of material prejudice to avoid proving its claim under § 523(a)(2), (4) or (6).

*Id.* at 259–60. Other courts have similarly limited the availability of determinations of nondischargeability under section 523(a)(3)(B) by requiring evidence of the underlying cause of action. *See In re Anderson,* 72 B.R. 783, 788 (Bankr.D.Minn. 1987); *In re Zablocki,* 36 B.R. 779, 782 (Bankr.D.Conn.1984); *In re Iannacone,* 21 B.R. 153, 154 (Bankr.D.Mass.1982).

█ In the present case there were no allegations of actual bad acts which would have rendered the claim nondischargeable had a timely complaint been filed. Nor was there any demonstration of material prejudice to Spilka. Accordingly, no consideration of the underlying facts should have been allowed.

█ Nonetheless, this court did consider at trial the evidence presented by the parties relative to nondischargeability under section 523(a)(6). Spilka argued at trial that the Bosses' failure to supply him with the appropriate password amounted to intentional injury to his property justifying a determination of nondischargeability. Based on the evidence, however, Spilka was not entitled to such a determination. The evidence did not demonstrate that the debtors knew the password and intentionally kept that information from Spilka. Rather, if anyone was aware of the password and refused, albeit temporarily, to share that information with Spilka it was Katherine Kratz, Mrs. Bosse's mother, the debtors' business manager. Furthermore, there was no evidence presented that the debtors exercised any actual control over Mrs. Kratz or conspired with her to deprive Spilka of the information necessary to access his computer.

Accordingly, based both on Spilka's failure to plead an actual cause of action under section 523(a)(2), (4), or (6), and upon the evidence adduced at trial, this court determines that the creditor is not entitled to a finding of nondischargeability under section 523(a)(3)(B).

█ The remaining issue to be decided is whether section 523(a)(3)(A) automatically excepts Spilka's claim from the debtors' discharge when he did not have any knowledge of the filing of their petition until after the deadline had passed for filing a timely proof of claim. This question has been addressed in numerous cases and the answers have generally followed two divergent lines of authority, both finding their genesis under the Bankruptcy Act. The strict constructionists have followed the rule of *Milando v. Perronne,* 157 F.2d 1002 (2d Cir.1946), wherein the court, construing section 17(a)(3) of the Bankruptcy Act, the predecessor to the provision at issue here, refused to allow the debtor in a no asset case to reopen the proceedings to amend it schedules to include an inadvertently omitted claim and permit discharge of that claim. The court held:

> This section provides that a discharge shall not release a bankrupt from a debt which he has not scheduled in time for it to be proved and allowed in the bankruptcy proceedings unless the creditor has notice or actual knowledge of the proceedings. The courts have no power to disregard this clear language.... The fact that the judgment creditor in this case would have received no dividends if he had been able to prove his claim would therefore not be a sufficient reason to disregard the mandate of the section even if the courts had reason to disregard it.

*Id.* at 1003–1004. *Accord In re Brown,* 27 B.R. 151, 153 (Bankr.N.D.Ohio 1982); *In re Iannaconne,* 21 B.R. 153, 155 (Bankr.D. Mass.1982).

The more liberal cases follow the lead of the Fifth Circuit's decision in *Robinson v. Mann,* 339 F.2d 547 (5th Cir.1964). *Robinson v. Mann* held that bankruptcy courts hold the discretion to allow the amendment of schedules after the claims period has expired under exceptional circumstances. The court suggested the factors to be considered included: (1) the circumstances of

the debtor's failure to list the creditor originally in his schedules, (2) the degree of disruption which would result from allowing the amendment, and (3) whether the unlisted creditor as well as creditors generally would be prejudiced by the amendment. *Id.* at 550.

The courts which have followed *Robinson v. Mann* have generally allowed not only the reopening of a debtor's case to allow amendments to the schedules to add an omitted creditor, but also to allow the discharge of that creditor's claim. Disregarding the unequivocal language of the statute, the cases have held that the added claim will be discharged in a no asset case in the absence of prejudice to the creditor and fraud or intentional design in the omission in the regular scheduling. *In re Stark,* 717 F.2d 322 (7th Cir.1983); *In re Rosinski,* 759 F.2d 539 (6th Cir.1985); *In re Anderson,* 72 B.R. 783 (Bankr.D.Minn. 1987).

The Ninth Circuit Bankruptcy Appellate Panel addressed the application of section 523(a)(3)(A) in *In re Laczko,* 37 B.R. 676 (Bankr. 9th Cir.1984), *aff'd* (without opinion), 772 F.2d 912 (9th Cir.1985). In *Laczko* the debtor amended his schedules under former Bankruptcy Rule 110 to add an inadvertently omitted creditor, and then sought to discharge the same creditor's prepetition claim against him. The omitted creditor had first learned of the debtor's bankruptcy well after the deadline for filing claims as set by the court. Even though a deadline had been set for the filing of claims, there were insufficient assets to provide for any distribution to unsecured creditors such that *Laczko* was in reality a no asset case. The Appellate Panel discussed both *Milando v. Perronne* and *Robinson v. Mann* and chose to follow the Second Circuit's strict approach that courts are bound by the clear language of § 523(a)(3)(A), holding that the debt was nondischargeable since the creditor did not have knowledge of the debtor's bankruptcy

case in time to file a timely proof of claim. *In re Laczko,* 37 B.R. at 678–679.

The court firmly rejected the argument that § 523(a)(3)(A) should not bar the debtor's discharge of debt where there are no assets in the estate and the creditor would not be prejudiced by his omission from the debtor's schedules. *Id.* at 678. The Appellate Panel specifically addressed *In re Stark,* 717 F.2d 322 (7th Cir.1983), and distinguished it on the facts without having to consider the policy considerations of the debtor's fresh start underlying that decision. The court observed that in *Stark,* which always was a no asset case, the bankruptcy court notified creditors that no claims needed to be filed. Accordingly, the bar date for filing claims was never set and § 523(a)(3)(A) was never triggered. *In re Laczko,* 37 B.R. at 679.

At least one court in this district has construed the *Laczko* decision as adopting *Stark* by implication, and has allowed the discharge of an omitted claim because it was a no asset case and the bar date for filing claims had never been triggered. *In re Hendricks,* 87 B.R. 114, 116 (Bankr.C.D. Ca.1988).

The debtor has urged this court to embrace *Robinson v. Mann* and its progeny, arguing that this is essentially a no asset case. The record does not reflect such to be the case. On September 27, 1988, the trustee notified the Clerk's office that there were assets to be administered in the debtors' chapter 7 estate. On October 4, 1988, the notice of possible dividend and order fixing time to file claims was sent to creditors. There has been no final report filed by the trustee indicating a lack of assets for distribution to unsecured creditors.

Even if this were actually a no asset case despite the issuance of a notice to file claims as was *Laczko,* this court is unpersuaded that it should go beyond the unambiguous language of section 523(a)(3)(A), and former section 17(a)(3) and adopt the approach of *Robinson v. Mann.*[1] Section

1. In addition to the unequivocal language of § 523(a)(3), emphasis on *Robinson v. Mann* in the context of dischargeability under

§ 523(a)(3) may be misplaced. Bankruptcy Rule 1009(a), formerly Rule 110, allows a debtor to amend its schedules as a matter of course

523(a)(3), as written, may indeed produce harsh consequences which courts have struggled to avoid. This may be especially true in light of the policy in favor of a fresh start for the debtor. However, bankruptcy courts, as courts of equity, must follow express statutory authority to the same extent as courts of law. *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir.1987). To that end, this court is powerless to ignore the plain language of § 523(a)(3)(A) in order to reach a result more in line with equitable ideas. *See In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988).

■ Finally, the debtors suggest that Spilka's claim should be discharged because under section 726(a)(2)(C) he is not prejudiced as he will be able to participate equally with other creditors in any distribution of the estate, relying on *In re Sandoval*, 102 B.R. 220 (Bankr.D.N.M.1989).[2]

*Sandoval* began as an asset estate and a claims bar date was set. Eventually, however, the trustee filed a report of no distribution. The court held that so long as an omitted creditor's claim could be filed in time to share in any distribution from the estate under section 726(a)(2)(C), the creditor was not prejudiced and, therefore, as a practical matter the creditor was deemed to have filed a timely proof of claim for purposes of section 523(a)(3)(A). *In re Sandoval*, 102 B.R. at 222. This court is not persuaded by *Sandoval* because the trial court's reasoning would essentially render section 523(a)(3)(A) meaningless. Instead, section 726(a)(2)(C) supplements the relief provided an omitted creditor under section 523(a). Section 726(a)(2)(C) permits a creditor who holds a nondischargeable claim to share in the distribution of assets, to the extent there are any, providing some immediate payment and limiting the potential for shortfall should collection efforts against the debtor fail or prove difficult outside of bankruptcy.[3]

If it is actually the intent of Congress to allow the addition of omitted claims and the discharge of those claims in all instances other than those in which the creditor can demonstrate actual prejudice, it is for Congress to so legislate. Accordingly, this court adopts the strict constructionist view espoused by the Second Circuit in *Milando v. Perronne*, 157 F.2d 1002, and as adopted by the Ninth Circuit Bankruptcy Appellate Panel in *In re Laczko*, 37 B.R. 676.[4]

at any time before the close of the case. There was no such right to amend when *Robinson v. Mann* was decided. *Robinson* addressed whether a debtor could add a creditor after the bar date for amending had passed under former § 57(n). The question of dischargeability of the omitted debt was neither raised nor discussed. The Advisory Committee Note to Rule 1009 makes clear that when a schedule is amended to include an additional creditor, questions of dischargeability of that claim are governed by § 523(a)(3).

2. Section 726(a)(2)(C) provides that a creditor who tardily files a claim may share in any distribution of the estate if "the creditor who holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim … and proof of such claim may be filed in time to permit payment of such claim."

3. That a creditor who holds a nondischargeable claim may also participate in any distribution from the estate is consistent with Congress' provision for the filing of proofs of claims under certain circumstances by the debtor, on behalf of a creditor, pursuant to § 501(c). The legislative history of § 501(c) explains that its purpose is "to protect the debtor if the creditor's claim is nondischargeable. If the creditor does not file, there would be no distribution on the claim, and the debtor would have a greater debt to repay after the case is closed than if that claim were paid in part or in full in the case or under the plan." H.R.Rep. No. 595, 95th Cong., 1st Sess. 352 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6307–08, 5847. *See also In re Howell*, 84 B.R. 834 (Bankr.M.D.Fla.1988) (creditor holding nondischargeable claim in a Chapter 11 case is entitled to participate in the distribution to unsecured creditors under the plan, and also has the right to collect on its nondischargeable judgment outside the plan). This court is aware that the Fourth Circuit Court of Appeals has construed this issue to the contrary in *In re Farmer*, 786 F.2d 618, 621 (4th Cir.1986). However, that decision and the authority cited therein, *In re Overmyer*, 26 B.R. 755, 758 (Bankr.S.D.N.Y.1982) ignore legislative history and reveal no statutory analysis or policy considerations.

4. The concurring opinion in the recent case of *In re Bowen*, 102 B.R. 752 (Bankr. 9th Cir.1989) suggested that *In re Laczko* may have been overruled *sub silentio* by the later decision of *In re Lochrie*. The concurrence would have *Lochrie's* consideration of prejudice to the creditor in the context of § 523(a)(3)(B) expanded to all in-

The request for sanctions is denied. All parties are to bear their own attorney's fees.

Judgment shall be entered determining Spilka's claim to be nondischargeable. Counsel for Herbert Spilka shall prepare and lodge a proposed judgment consistent herewith.

stances under § 523(a)(3), in essence adopting the *Robinson v. Mann* approach. This court does not read *Lochrie* so expansively.