PER CURIAM.
Plaintiff, Mary Jane Kowalski (Kowalski), appeals the dismissal of her adversary complaint in this bankruptcy case against the defendant, Evelyn Glenn Romano (Romano). Kowalski argues that the bankruptcy court abused its discretion in reopening Romano’s bankruptcy case thirteen years after it was closed and erred in finding that her claim was discharged in the bankruptcy. After review, we affirm.
I.
Romano filed Chapter 7 bankruptcy proceedings in May 1982. Kowalski was not listed as a creditor on Romano’s schedules. A discharge order was entered in October 1982. The case was originally noticed as a no asset case, and creditors were not required to file proofs of claim. On August 29, 1984, however, a notice to file claims was issued stating that the trustee had identified funds for distribution. Creditors were ordered to file proofs of claim by November 29, 1984. The bankruptcy estate was distributed in 1986, and the case was closed in 1987.
Romano’s late husband, Thomas H. Glenn, was a licensed physician who operated the Glenn Clinic. On November 27, 1984, Kowalski brought a malpractice action in a Michigan state court against Romano, in her individual capacity and as representative of Dr. Glenn’s estate, and against Robert I. Lubin, a licensed physician who was brought in to operate the Glenn Clinic after Dr. Glenn’s death. Specifically, Kowalski claimed that (1) Dr. Glenn severed tendons in her foot dining a bunion removal procedure, (2) Romano assisted Dr. Glenn as a nurse and operated the clinic without a license for a period of time after her husband’s death, and (3) Dr. Lupin further injured Kowalski while trying to repair the severed tendons. The alleged acts of Romano occurred between 1971 and 1980.
A default was entered against Romano in 1985. It appears that Kowalski had knowledge of the pending bankruptcy at that time based on affidavits and orders for substituted service which referenced the bankruptcy court file and Romano’s bankruptcy attorney.[1] In October 1988, Kowalski obtained a default judgment against Romano for $300,000, plus interest and costs, after reaching a settlement with Dr. Lubin.
Romano had moved to Florida in 1982 and allegedly did not learn of the judgment until Kowalski tried to enforce it in Florida in October 1993. Romano sought to set aside the default judgment through the state appellate courts. When those efforts failed, she filed a motion in 1995 to reopen her bankruptcy case, list Kowalski as a creditor, and discharge the default judgment. The bankruptcy court granted the motion to reopen the bankruptcy case. After a second hearing, the bankruptcy court granted the motion to list Kowalski as a creditor, but denied the motion to discharge the judgment. The bankruptcy court ordered “[t]he issue of discharge-ability shall be determined by adversary proceedings, as stated on the record.” Kowalski’s appeal to the district court was denied because the order reopening the bankruptcy was not a final order.
*711 Kowalski then filed an adversary complaint alleging that the default judgment was not dischargeable under 11 U.S.C. § 528(a)(2), (3), (4), and (6). The bankruptcy court dismissed the adversary complaint for lack of progress. On appeal, the district court affirmed the reopening of the bankruptcy case but reversed the dismissal of the adversary complaint for lack of progress.[2]
Kowalski and Romano testified at the trial on remand. The bankruptcy court found that Kowalski’s claim was discharge-able because (1) there were no fraudulent misrepresentations made by Romano to Kowalski under § 523(a)(2); (2) there was no fiduciary relationship between Romano and Kowalski under § 523(a)(4); and (3) Romano did not willfully and maliciously cause Kowalski’s injury under § 523(a)(6). Kowalski also argued that the judgment was not dischargeable under § 523(a)(3) because she was an unscheduled creditor and did not receive notice to permit timely filing of a proof of claim and request for determination of dischargeability. The bankruptcy judge rejected this argument because he felt it had previously been addressed in the order reopening the case. The bankruptcy court then dismissed the adversary complaint, and Kowalski appealed to district court.
Kowalski again challenged the reopening of the bankruptcy case, as well as the finding that her judgment was discharged. The district court refused to reconsider the reopening argument because it was not included in the notice of appeal. The district court found that the bankruptcy court should not have made specific findings regarding Romano’s actions in determining dischargeability under § 523(a)(6), but was bound by the default judgment under the doctrine of collateral estoppel. Nonetheless, the district court found that because the allegations in the complaint were based in negligence and not willful and malicious conduct, the judgment was dischargeable. The district court also affirmed the bankruptcy court’s findings under § 523(a)(4) because there were no allegations of fraud in the state court complaint and no fiduciary relationship between Kowalski and Romano. In the appeal to the district court, Kowalski’s argument under § 523(a)(3) was referenced in a few sentences in the “Prayer for Relief” section of the brief. Presumably, the argument was overlooked because of its placement in the brief, and the district court did not address it. This appeal followed.
II.
In an appeal from the decision of a district court on appeal from the bankruptcy court, this court independently reviews the bankruptcy court’s decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of law. In re Madaj, 149 F.3d 467, 468 (6th Cir.1998).
A. Motion to Reopen
The district court refused to review the reopening of the bankruptcy case because Kowalski’s notice of appeal referenced only the order dismissing the adversary complaint. This court, however, has construed notices of appeal liberally to include previous judgments, even when they were not specified in the notice of appeal. See Cattin v. Gen. Motors Corp., 955 F.2d 416, 428 (6th Cir.1992). As a result, we will consider Kowalski’s argument regarding the bankruptcy court’s decision to reopen the case.
A bankruptcy case may be reopened to “administer assets, to accord relief to the *712 debtor, or for other cause.” 11 U.S.C. § 350(b). We review a bankruptcy court’s decision to reopen for abuse of discretion. In re Rosinski, 759 F.2d 539, 541 (6th Cir.1985).
Kowalski argues that the doctrine of laches bars the reopening of this case because she was prejudiced by her inability to receive any part of the distribution made in 1986. As will be discussed fully below, this argument goes to the separate issue of the dischargeability of her claim under § 523(a)(3).
A complaint to determine the dischargeability of a debt under § 523(a)(3) may be brought at any time by either the creditor or the debtor.[3] Fed. R. Bankr. P. 4007(b). This court rule also provides that a bankruptcy case can be reopened for purposes of determining dischargeability without the payment of an additional filing fee. Id. Neither reopening the case nor adding a creditor to the schedule upon reopening affects the dischargeability of the creditor’s debt. See Madaj, 149 F.3d at 470. The better practice is to resolve the issues surrounding dischargeability in the underlying litigation on the adversary complaint. See In re Staffer, 306 F.3d 967, 972 (9th Cir.2002) (bankruptcy court did not abuse its discretion reopening a bankruptcy case six years after creditor learned of bankruptcy to permit adversary complaint to be filed to determine discharge-ability; issue of prejudice should be considered at trial on adversary complaint). The bankruptcy court correctly reopened the case and allowed Kowalski to file her adversary complaint in order to determine the dischargeability of the judgment as a separate matter.
Even if prejudice should be considered as a bar to reopening a bankruptcy case, any prejudice Kowalski suffered was a result of her own inaction. It is undisputed that Kowalski had actual knowledge of the bankruptcy in 1985. The order for distribution of Romano’s bankruptcy estate was not issued until November 12, 1986. Kowalski could have participated in the distribution by “tardily” filing a proof of claim pursuant to 11 U.S.C. § 726(a)(2)(C). Under these circumstances, we find that the bankruptcy court did not abuse its discretion in reopening the bankruptcy case to determine the dischargeability of the default judgment.[4]
B. Adversary Complaint
Kowalski’s argument under § 523(a)(3) is relegated to the conclusion section of her appellate brief. The argument was not identified in the statement of issues or the summary of the arguments as required by Fed. R.App. P. 28(a)(5) and (8). We could decline to consider the argument as not developed or supported by legal authority. See United States v. Elder, 90 F.3d 1110, 1118 (6th Cir.1996) (“[I]t is a ‘settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.’ ” (citation omitted)). The bankruptcy court erred, however, in not addressing this argument below due to a misunderstanding of the scope of the order reopening the case. A review of that order shows that the court *713 had not ruled on the dischargeability of Kowalski’s claim under § 523(a)(3). In addition, Kowalski presented arguments regarding prejudice applicable to § 523(a)(3) in the portion of her brief challenging the decision to reopen the case. Finally, the only way for Kowalski to obtain a determination of dischargeability under § 523(a)(4) and (6) is through § 523(a)(3)(B).[5] The parties have been struggling with the state court judgment and the bankruptcy proceedings for over a decade. We will, therefore, address Kowalski’s arguments under § 523(a)(3) to bring closure and to serve the interests of justice.
It is undisputed that Kowalski’s claim was not listed on the bankruptcy schedules. Under the Bankruptcy Code, there is no requirement that a claim be scheduled in order to be discharged. Madaj, 149 F.3d at 472. In addition, all claims that arise before the date of the discharge order are discharged whether or not a proof of claim is filed. 11 U.S.C. § 727(b). The only limitation on discharge under § 727(b) is § 523, which contains the exceptions to discharge. In the context of faffing to schedule a creditor, nondischargeability can arise only under § 523(a)(3).
Subsection 523(a)(3)(A) deals with unscheduled claims other than those specified in § 523(a)(2), (4), or (6). An unscheduled claim is not discharged under subsection (A) if the creditor does not have notice or actual knowledge of the bankruptcy to permit timely filing of a proof of claim.
Under § 523(a)(3)(B), a claim is nondischargeable if it is not listed or scheduled in time to permit:
(b) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request!.]
In other words, a creditor’s debt is exempt from discharge if she can show that her claim falls under § 523(a)(2), (4) or (6), and that she could not file a timely proof of claim or a timely request for a determination of dischargeability under § 523(a)(2), (4), or (6).
Under 11 U.S.C. § 502, a proof of claim may be disallowed if it is not timely filed. The time for filing proofs of claim is set forth in Fed. R. Bankr.P. 3002(b). In Chapter 7 cases, however, unlike Chapter 11, 12, and 13 cases, some untimely filed proofs of claim are allowed. Section 502(b)(9) provides that an untimely claim should be disallowed “except to the extent tardily filed as permitted under subsection (1), (2) or (3) of § 726(a).” In Chapter 7 cases, § 726(a)(2)(C) allows payments to unsecured creditors who submit “tardily filed” proofs of claim if the creditor had no notice or actual knowledge of the bankruptcy case to permit a timely filing. The tardy claim must be filed in time to permit payment, i.e., before the distribution of the bankruptcy estate. 11 U.S.C. § 726(a)(2)(C)(ii). These payments are allowed the same priority as timely filed claims.
On its face, § 523(a)(3) does not differentiate between timely filed claims and tardily filed claims that share equally in the distribution of the bankruptcy estate. We know of no appellate decisions examining the interaction of § 523(a)(3) and § 726(a)(2)(C). Some bankruptcy courts have held that a debt must be excepted from discharge under § 523(a)(3) even if the creditor had knowledge in time to file a tardy proof of claim and fully participate in *714 the distribution under § 726(a)(2)(C). They say to hold otherwise would render the “timely” language in § 523(a)(3) meaningless. See In re IIauge, 232 B.R. 141 (Bankr.D.Minn.1999); In re Bosse, 122 B.R. 410 (Bankr.C.D.Cal.1990). Other courts have held, as we do today, that in Chapter 7 cases § 523(a)(3) must be read in conjunction with § 726(a)(2)(C). See In re Ricks, 253 B.R. 734 (Bankr.M.D.La. 2000); In re Ruhr, 132 B.R. 421, 424 (Bankr.E.D.Cal.1991).
The central purpose of the Bankruptcy Code is to allow the debtor to reorder her affairs and enjoy a fresh start. As a general matter, the exceptions to discharge in § 523(a) must be narrowly construed to promote this central purpose. In re Meyers, 196 F.3d 622, 624 (6th Cir.1999). A creditor who has timely knowledge of a bankruptcy has many rights, including the right to question the debtor in the creditors’ meeting. Section 523(a)(3), however, is only concerned with the ability to file a proof of claim. This must have deeper significance than the mere right to file a piece of paper in the bankruptcy court. The end result of filing a proof of claim is the right to receive a payment upon the distribution of the debtor’s bankruptcy estate. Thus, the purpose of § 523(a)(3) must be the protection of the unscheduled creditor’s right to share in the distribution.
If this is the purpose of § 523(a)(3), the determinative factor on timeliness must be whether the creditor filed a proof of claim in time to share in the distribution. In Chapter 11, 12, and 13 cases, there is only one date when this can occur. In Chapter 7 cases, however, creditors who file their proof of claim by the date specified in Rule 3002 share equally in the distribution with creditors who file by the date specified in § 726(a)(2)(C). Determining timeliness to include claims filed pursuant to § 726(a)(2)(C) is consistent with the policy in favor of discharge and a fresh start for the debtor. At the same time, it also serves the purpose of protecting the unscheduled creditor’s right to share in the distribution of the bankruptcy estate.
Kowalski had knowledge of the bankruptcy in 1985 and could have tardily filed a proof of claim and fully participated as an unsecured creditor in the distribution in 1986. Thus, if Kowalski’s claim is not of the kind specified in § 523(a)(2), (4) or (6), her debt is not exempt from discharge under § 523(a)(3)(A).
Kowalski alleges, however, that her claim is of the kind specified in § 523(a)(4) and (6) and, therefore, nondischargeable under § 523(a)(3)(B). The time for filing a complaint to determine dischargeability in this Chapter 7 case under § 523(a)(4) or (6) was within 60 days after the first date set for the meeting of creditors. Fed. R. Bankr. P. 4007(c). The first date set for the creditors meeting was in 1982, and there is no evidence that Kowalski had knowledge of the bankruptcy before 1985. Thus, although she could have tardily filed a proof of claim, she could not have filed a timely complaint to determine discharge-ability.
We must then determine whether Kowalski’s claim is of the kind specified in § 523(a)(4) or (6). Courts disagree on the degree of proof the creditor must offer under § 523(a)(3)(B) to show that her claim is of the kind specified in § 523(a)(4) or (6). Some hold that a creditor must prove the merits of her claim under § 523(a)(4) or (6) for it to be nondischargeable under § 523(a)(3)(B). Others require the creditor to show only that she holds a viable § 523(a)(4) or (6) claim. Kowalski cannot meet either burden of proof.
Kowalski argues that her claim is the kind specified in § 523(a)(4) because while Romano was the fiduciary (the personal representative) of Dr. Glenn’s estate, she fraudulently held herself out to be a *715 licensed physician, collected fees from patients of the Glenn Clinic, and kept the money for herself. Section 523(a)(4) excepts from discharge a claim for “fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” The claim must result from the fraud of the debtor acting as a fiduciary to the creditor. See In re Garver, 116 F.3d 176, 179 (6th Cir.1997). Kowalski’s default judgment against Romano in her individual capacity was not based on acts taken by Romano as the personal representative on behalf of Dr. Glenn’s estate. Moreover, Kowalski did not assert that there was a fiduciary relationship between herself and Romano. Thus, the default judgment is not of the kind specified in § 523(a)(4).
With respect to Kowalski’s claim under § 523(a)(6), the district court concluded that the default judgment should be given collateral estoppel effect in this subsequent bankruptcy proceeding. It is not necessary for us to determine whether Michigan law requires preclusive effect be given to default judgments. See In re Calvert, 105 F.3d 315, 315 (6th Cir.1997) (Full Faith and Credit Statute directs federal court to refer to the preclusion law of the state in which the judgment was rendered). Even if we assume the default judgment should be given collateral estoppel effect, Kowalski cannot make a claim of nondisehargeability under § 523(a)(6).
Section 523(a)(6) excepts from discharge any debt “for willful and malicious injury by the debtor to another entity.” The Sixth Circuit has interpreted this to mean that the debtor must have desired to cause the consequences of her act, or believed that the consequences are substantially certain to result from it. In re Markowitz, 190 F.3d 455, 464 (6th Cir.1999). A review of the state court complaint shows that Romano’s alleged conduct sounds in negligence and medical malpractice. Paragraph 2 states that Romano treated Kowalski even though she was not licensed as a physician or nurse. Paragraph 6 states that Romano and Dr. Glenn recommended surgery to Kowalski. Paragraphs 7 and 8 state that Romano assisted Dr. Glenn in the surgery, and that both were “negligent and careless” in the performance of the surgery. Paragraphs 9 and 10 state that Romano and other members of the clinic provided follow-up care that was “negligent and not in accordance with the standards of practice.” Paragraphs 12 and 13 summarize all the acts and damages and characterize the acts of the defendants, including Romano, as “negligence” and “malpractice.” This alleged conduct, which is deemed admitted under Michigan law through the default judgment, does not constitute the willful and malicious conduct required by § 523(a)(6). There were no allegations that Romano desired or intended to injure Kowalski, or that Romano believed that Kowalski’s injuries were substantially certain to result from Romano’s actions.[6] Kowalski’s claim, therefore, is not of the kind specified in § 523(a)(6) and her judgment was properly discharged in the bankruptcy.
AFFIRMED.

. The bankruptcy court found that Kowalski apparently knew about the bankruptcy at the time her state court complaint was initially filed on November 27, 1984. This would have been before the deadline for filing a proof of claim on November 29, 1984. A review of the pleadings and the testimony, however, reveals no evidence that Kowalski learned of the bankruptcy until after that date when the process server could not obtain service over Romano.

. Although Kowalski did not list the reopening of the bankruptcy proceedings as error in the notice of appeal, the district court nonetheless chose to address the issue.

. A complaint to determine dischargeability under § 523(a)(2), (4), and (6) in a Chapter 7 case must be brought within 60 days after the first date set for the meeting of the creditors. Fed. R. Bankr. P. 4007(c). An unscheduled creditor who did not have knowledge of the bankruptcy allowing her to timely file a complaint under § 523(a)(2), (4), or (6), however, is saved by § 523(a)(3)(B). A complaint under § 523(a)(3)(A) and (B) can be brought at any time. See 11 U.S.C. § 523(c)(1).

. The decision to reopen is not challenged on the grounds of fraud or intentional design so we need not address them. See Rosinski, 759 F.2d at 541.

. Kowalski has not pursued her arguments under § 523(a)(2) on appeal.

. The fact that Romano allegedly practiced nursing or medicine without a license and that this constitutes a felony under Michigan law is not relevant to the issue of willful and malicious conduct. An intentional or deliberate act alone does not constitute willful and malicious conduct under § 523(a)(6). There were no allegations that Romano intended to harm Kowalski by practicing medicine without a license or that she believed that Kowalski’s injuries were substantially certain to result from that act.