**In re Alan Neal WILSON, Debtor.**

**No. 13–41923.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Signed May 30, 2014.

---

Joshua Sanfield, Warren, MI, for Debtor.

### ORDER GRANTING DEBTOR'S MOTION TO REOPEN

MARK A. RANDON, Bankruptcy Judge.

## I. INTRODUCTION

Before Alan Neal Wilson, M.D. filed this no-asset Chapter 7 bankruptcy petition and received a discharge, he performed a panniculectomy[1] and liposuction surgery on Ms. Williams. Williams claims Dr. Wilson botched the operation and failed to provide appropriate follow-up care, leaving her with a serious infection, in need of corrective surgery, and permanently scarred; she recently filed a notice of intent to sue Dr. Wilson, and others, for medical malpractice.[2]

---

1. A panniculectomy is when excess skin and tissue over a person's genitals and/or thighs is surgically removed. University of Michigan Health Systems Department of Surgery, *Plastic Surgery at the University of Michigan*, http://surgery.med.umich.edu/plastic/patient/ adult_procedures/panniculectomy (last visited May 30, 2014).

2. Providing such notice is a prerequisite for filing a medical malpractice claim in Michigan. The plaintiff must then generally wait

Unknowingly or by design, Dr. Wilson omitted Williams' claim from his bankruptcy Schedule F and Creditor Matrix; the case was closed before he received written notice that Williams wanted to sue him. He now moves to reopen the case, list Williams as a creditor, and ultimately obtain a discharge of the debt. Williams opposes the motion to reopen; the Court heard argument on May 29, 2014.

In general, a debtor's request to reopen a Chapter 7 no-asset bankruptcy case to add an omitted creditor is unnecessary. But, as explained below, because Williams did not have an opportunity to challenge the dischargeability of the debt under 11 U.S.C. § 523(a)(3)(B), Dr. Wilson's motion is **GRANTED**.

## II. BACKGROUND

Dr. Wilson's Chapter 7 bankruptcy petition was filed on February 1, 2013. Although he performed Williams' surgery in March of 2012, Dr. Wilson did not list her claim on Schedule F (Creditors Holding Unsecured Nonpriority Claims). He says that during the pendency of the bankruptcy case, he was unaware of Williams' dissatisfaction with the surgical procedure, or her intent to file a malpractice lawsuit.

No deadline was set for creditors to file claims during Dr. Wilson's bankruptcy case. But—unbeknownst to Williams—a May 13, 2013 deadline was set to challenge the dischargeability of certain debts. The Trustee determined that Dr. Wilson had no non-exempt assets and filed a report of no distribution. The Court entered a discharge on July 2, 2013 and closed the case.

On March 8, 2014, Williams sent Dr. Wilson a notice of intent to sue. Dr. Wilson filed this motion to reopen one month later.

## III. DISCUSSION

■ Section 350(b) of the Bankruptcy Code allows the Court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The decision to reopen a closed case is a matter within the Court's discretion. *Smyth v. Edamerica, Inc. (In re Smyth)*, 470 B.R. 459, 462 (6th Cir. BAP 2012).

■ The general rule in a no-asset Chapter 7 case is that once the debtor obtains a discharge under 11 U.S.C. § 727, *most* prepetition debts—scheduled or omitted—are automatically discharged, because there is no date by which a proof of claim must be filed and unsecured creditors receive no distribution. There is no requirement in such cases that a claim be scheduled in order to be discharged. *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir.1998). Accordingly, "reopening the case merely to schedule an omitted debt is for all practical purposes a useless gesture." *Id.* at 468 (quoting *In re Hunter*, 116 B.R. 3, 5 (Bankr.D.D.C.1990)) (internal brackets omitted). And, Dr. Wilson's reason for omitting the claim from his bankruptcy schedules is irrelevant.[3]

182 days before filing a complaint in state court. Mich. Comp. Laws § 600.2912b(1).

**3.** In requesting that the Court deny Dr. Wilson's motion to reopen, Williams cites pre-*Madaj* authority that she says stands for the proposition that the case cannot be reopened if Dr. Wilson fraudulently omitted her from the schedules and Creditor Matrix. *See, e.g., In re Soult*, 894 F.2d 815, 818 (6th Cir.1990) (finding no error in the bankruptcy court's reopening of a no-asset Chapter 7 case to permit listing of a previously omitted creditor, but noting that the "case could not be reopened, of course, if [debtor's] original failure to schedule the [ ] debt was willful, reckless, or fraudulent"). But such a finding—were the Court to make it—is immaterial:

A debt is either fraudulent or not depending on the debtor's actions and intent in incurring the debt in the first instance. An oth-

■ However, when an omitted debt is of a kind described in 11 U.S.C. § 523(a)(2), (4), or (6), a creditor may challenge its dischargeability. 11 U.S.C. § 523(a)(3)(B):

> [an omitted debt is not discharged] if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, [and not scheduled in time to allow a] timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

*Kowalski v. Romano (In re Romano)*, 59 Fed.Appx. 709, 713 (6th Cir.2003) ("[i]n the context of failing to schedule a creditor, nondischargeability can arise only under § 523(a)(3)"); *In re Karamitsos*, 88 B.R. 122, 123 (Bankr.S.D.Tex.1988) (a debt "is either discharged or excepted from discharge based on a judicial analysis of [ ] § 523(a)(3)"). Williams was not listed as a creditor and did not have an opportunity to challenge the dischargeability of the debt under § 523(a)(3)(B).

The remaining issue therefore begs the Court to determine whether Williams' claim is of a kind described in § 523(a)(2), (4), or (6), thereby invoking an exception to discharge under § 523(a)(3)(B). Of these three subsections, § 523(a)(6) is the only one conceivably relevant to Williams' medical malpractice claim.[4] It provides for an exception to discharge where an omitted

creditor can show "willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). This determination of dischargeability is properly addressed through an adversary proceeding commenced by the filing of a complaint. *See, e.g., Staffer v. Predovich (In re Staffer)*, 306 F.3d 967, 972 (9th Cir.2002) (it was not an abuse of discretion to reopen a bankruptcy case—after creditor learned of bankruptcy—to permit an adversary proceeding regarding dischargeability); *In re Romano*, 59 Fed.Appx. at 712 (holding that the bankruptcy court did not abuse its discretion in reopening the bankruptcy case to determine the dischargeability of a default judgment).

■ Williams is cautioned that to succeed in any subsequent adversary proceeding, she must clear a high hurdle: she must prove Dr. Wilson intended to cause her injuries. A garden variety medical malpractice claim will not suffice. *See generally Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (debt arising from medical malpractice held dischargeable even when conduct was negligent or reckless); *In re Markowitz*, 190 F.3d 455, 464 (6th Cir.1999) (interpreting § 523(a)(6) to mean that debtor must have desired to cause the consequences of her act, or believed that the consequences were substantially certain to result from it). And, exceptions to discharge are to be construed narrowly in favor of the debtor. *Monsanto Co. v. Trantham (In re Trant-*

---

erwise innocently incurred debt ... does not suddenly become a fraudulently incurred debt when the debtor fails to list it.... Even if ... [d]ebtor[ ] purposely failed to list the debt in an attempt to defraud the [c]reditor[ ], this action did not (and could not) work some perverse alchemy to change the innocent loan into a fraudulent debt of the type that is covered by § 523(a)(2), (4) or (6) and therefore ex-

cepted from discharge pursuant to § 523(a)(3)(B).
*Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 471 (6th Cir.1998).

4. Sections 523(a)(2) and (4) apply to fraudulently obtained "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by," and "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," respectively.

*ham)*, 304 B.R. 298, 306 (6th Cir. BAP 2004) (citing *Meyers v. I.R.S. (In re Meyers)*, 196 F.3d 622 (6th Cir.1999)). Notably, the allegations in Williams' notice of intent to sue sound in negligence. Still, reopening this case will give Williams an opportunity to carefully consider whether she can successfully contest the dischargeability of the debt.

## IV. CONCLUSION

Because Williams was omitted as a creditor in Dr. Wilson's no-asset Chapter 7 bankruptcy case, and she did not have an opportunity to challenge the dischargeability of the debt under 11 U.S.C. § 523(a)(3)(B), Dr. Wilson's motion is **GRANTED.** The case is **REOPENED** for the limited purpose of allowing Williams to file an adversary proceeding to address the dischargeability of the debt.

Williams must file any adversary proceeding by *July 30, 2014.* If she does not, the Court Clerk shall close the case and the debt will be deemed discharged.

**IT IS ORDERED.**